**WENG ZHEN SHOU, Petitioner**

v.

**The ATTORNEY GENERAL OF the UNITED STATES.**

No. 08–2816.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) March 17, 2010.

Opinion Filed: March 18, 2010.

Farah Loftus, Esq., Century City, CA, for Petitioner.

Paul Fiorino, Esq., James A. Hurley, Esq., Thomas W. Hussey, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for The Attorney General of the United States.

Before: AMBRO, CHAGARES and ALDISERT, Circuit Judges.

## OPINION

PER CURIAM.

On April 27, 2005, petitioner Weng Zhen Shou, a native and citizen of the People's Republic of China, was served with a notice to appear charging him with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Weng[1] conceded removability as charged, but applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), on the ground that he had suffered past persecution and feared future persecution by the PRC as a practitioner of Catholicism. Specifically, Weng alleged that in 2004, at the urging of his friend and to alleviate his depression, he joined the Catholic Church. According to Weng, the police discovered his church attendance and came to his house and threatened his parents. Weng testified that, fearing future persecution, he went to live with his aunt and then fled to the United States.

On April 30, 2007, an Immigration Judge ("IJ") rendered an oral decision and order denying Weng's various petitions for relief. Specifically, the IJ found Weng incredible with regard to his claims of police threats and, further concluded that he failed to satisfy his burden of proof by providing the necessary evidence of corroboration of the specifics of his claim. The IJ also found that Weng did not prove future persecution based on his Catholicism. On appeal, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision. Weng then filed a timely petition for review in this Court.

We have jurisdiction over Weng's petition pursuant to 8 U.S.C. § 1252(a). We uphold the BIA's determinations if they are supported by reasonable, substantial and probative evidence on the record considered as a whole. *Yusupov v. Att'y Gen.*, 518 F.3d 185, 197 (3d Cir.2008). When the BIA substantially relies on the IJ's adverse credibility determination, we have jurisdiction to review both opinions. *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004).

To be granted asylum, Weng needed to show that he is "unable or unwilling to return to [China] ... because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see also* 8 U.S.C. § 1158(b)(1)(A). To be eligible for withholding of removal, Weng was required to demonstrate that "there is a greater-than-fifty-percent chance of persecution" in China based on one of these protected grounds. *Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir.1998); *see also* 8 U.S.C. § 1231(b)(3)(C). For relief under the CAT, Weng must demonstrate that it is more likely than not that he would be tortured if removed to China. *See* 8 C.F.R. § 208.16(c)(2).

■ The BIA's finding that Weng's testimony was not credible is supported by substantial evidence.[2] *See Sukwanputra*

---

1. Petitioner's surname is "Weng" and he has been referred to as such throughout the course of these removal proceedings. (*See, e.g.*, A.R. 136.) For the sake of consistency and accuracy, we will refer to petitioner as Weng throughout this opinion.

2. Because Weng filed his asylum application after the enactment of the REAL ID Act, the IJ's credibility determination was made without regard to whether an inconsistency, inaccuracy, or falsehood went to the heart of Weng's claim. *See Chukwu v. Att'y Gen.*, 484 F.3d 185, 189 (3d Cir.2007). We have not considered whether the REAL ID Act's provision is consistent with principles of due process. We need not do so here, however, because the IJ's adverse credibility determination rested on inconsistencies that were

*v. Gonzales*, 434 F.3d 627, 636 (3d Cir. 2006) (holding that an adverse credibility determination is appropriately based on inconsistent statements and contradictory evidence). According to the IJ and BIA, there were inconsistencies among Weng's testimony, his credible fear interview and supporting letters he submitted from his parents. Specifically, the BIA found discrepancies in his descriptions of encounters with the police: in his credible fear application, Weng stated that the police tried to arrest him on his way to church; however, in his testimony, he stated that police came to his house to arrest him while he was away and he learned of the incident from his parents.

Weng argues that an inconsistency between his credible fear interview and his testimony is not sufficient to uphold the IJ's credibility assessment. We have held that inconsistencies between an airport statement and an asylum seeker's testimony before an IJ are not sufficient, standing alone, to support a BIA finding that petitioner was not credible. *See Chukwu*, 484 F.3d at 191. In this case, however, the IJ made a distinction between an airport statement (which the IJ did not consider) and the later credible fear interview. The record reveals that the credible fear interview was a detailed question and answer session which occurred at the detention center with an interpreter present and took place several days after Weng arrived in the United States.[3] (A.R. 151–52) Therefore, most of the concerns we have had about reliance on an airport statement were not present. *See Fiadjoe v. Att'y Gen.*, 411 F.3d 135, 159 (3d Cir.2005) ("Such an interview is likely to be hurried; language difficulties arise; the results may be inaccurately recorded, and an arriving

alien who has suffered abuse in his home country may be reluctant to reveal full information in his or her first meeting with the government.").

Credibility aside, an asylum applicant may be required to supply corroborating evidence in order to meet his burden of proof. *See Chen v. Gonzales*, 434 F.3d 212, 218 (3d Cir.2005). Here, as the IJ noted, Weng failed to provide any corroborating evidence except for letters from his parents which were inconsistent with parts of his testimony. Specifically, the parents' letters stated that Weng got involved with Catholicism because he was depressed and having trouble at a computer school, whereas Weng testified that he was a good student at a "regular" school. In sum, Weng has not demonstrated that the BIA's adverse credibility determination was erroneous.

Because Weng did not satisfy the standard for asylum, he cannot satisfy the higher burden of proof for withholding of removal. *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir.1991).

■ Weng supports his CAT claim by citing evidence that Falun Gong practitioners are tortured in China. (Petr.'s Br. at 13.) Weng, however, has not pointed to any evidence in the record which shows that it is more likely than not that he would be tortured in China because of his practice of Catholicism. Indeed, as the BIA noted, Catholicism is a recognized religion in China and its practice, though restricted, is permitted. Therefore, we find that the BIA's decision denying Weng's CAT claim is also supported by substantial evidence.

---

central to Weng's claim of persecution. *See Wang v. Holder*, 569 F.3d 531, 538 (5th Cir. 2009) (canvassing the provision).

**3.** The interviewer also informed Weng that he had the right to have a "consultant" present. Weng declined the offer. (A.R. at 151.)

For the foregoing reasons, we deny Weng's petition for review.